We're ready to hear argument in the case of Railey against Sunset Food Mart. Mr. Cockcroft. Thank you, Your Honor. May it please the Court. I'm Andrew Cockcroft, representing Defendant Appellant Sunset Food Mart. Sunset's appeal asks this Court to reverse the District Court's order holding as untimely Sunset's November 13, 2020, removal under the Labor Management Relations Act and Sunset's January 15, 2021, Supplemental Notice of Jurisdiction under the Class Action Fairness Act. The District Court erred in several respects. Removal under the Labor Management Relations Act was timely. In Walker v. Transit Trailer, this Court took, quote, the opportunity to clarify the standard... Counsel, forget Walker for a second. We can read that. But if you just look at the statute, why is your client entitled to wait when it knows that it has a collective bargaining agreement with its labor force? Yes, Your Honor. Though you've asked to disregard Walker, I would direct the Court to Walker as interpreting sexual... Counsel, just deal with my question. I said forget Walker for a second. Deal with the statute. Yes, Your Honor. So Section 1446B3 states that the timeliness, the clock, the 30-day clock for removal doesn't begin to run until the defendant receives a document from which it may first ascertain... No, that is the supplemental grant for things that change. The main rule in the statute is that the time runs from the commencement of the action. If you didn't know something vital, then notice in 30 days. But normally we expect defendants to know their own business, for example, and whether something is appealable. Let me put it a different way. What sense does it make to start the removal clock only when the plaintiff serves an employer with notice of something the employer already knows? Understood, Your Honor. The complaint as filed does not give the employer notice of removability under the Labor Management Relations Act. Plaintiff's complaint merely states that plaintiff was an employee in one position from January 2016 to January 2018 and was an employee in a different position beginning January 2018. Mr. Cockcroft, let me try the question this way. As a matter of fact, when your client received notice of the lawsuit, so it's service or otherwise, did Sunset have a way of knowing, as a matter of fact, whether Ms. Raley was a union member and subject to the existing collective bargaining agreements? Are you asking if Sunset did in fact know at that time or if it had a way at that time? In other words, it seems very odd to me that the defendant, in keeping I think with part of Judge Easterbrook's question here, would not see the first and last name of the plaintiff and then be able to instantly discern, oh, yeah, she's a member of the union. We ought to advance our complete preemption defense. Yes, Your Honor. So at the time, Sunset would have had the ability to figure that out, but it wouldn't have known whether she was represented by the union during the relevant time period. And why? Why not? Did she not know during what years the collective bargaining agreement was in effect? Your Honor, there was a portion of plaintiff's employment where she was no longer represented by the union. Well, I thought that's later. Doesn't she get some promotion or her responsibilities change? Yes, Your Honor. So in January 2018, she's no longer represented by the union. That part of her employment is specified in the complaint. And plaintiff alleges that she – well, so the complaint alleges that during her employment with Sunset, her biometric information was collected through a time clock. Right. So before her job changed, she was scanning her hand. That's what's giving rise to the cause of action. When your client sees her first and last name, I would have thought it was a few key strokes away from saying she's a member of the union. Your Honor, I would – so the first thing is that the complaint does not explicitly state that she – I'm not worried about the complaint. Judge Easterbrook's point is more about the defendant's knowledge. You're focused on what information by way of allegation the plaintiff supplied the defendant in the complaint. I'm just asking more of – the defendant knows its workforce, does it not? The defendant does know its workforce. I would represent to the court that the defendant in this case is not a, you know, a large multinational corporation run by a large legal department. They could have figured out that the plaintiff was represented by a union when the complaint was served, whether they had a – Right, in probably about 30 seconds. Because they know where she works and they know, as Judge Easterbrook's point out, they know it's a union shop there. Not everybody that is employed with the defendant is in a union, and not everybody that uses a time clock is in a union. But we've agreed, I take it, that Sunset could, by interrogating its own computer, figure out what part of itself Rayleigh was employed in and therefore whether she was subject to a collective bargaining agreement. When we're trying to figure out the time for removal, I wonder how this is any different from diversity of citizenship. A complaint is filed in state court and it demands, say, a million dollars in damages. And the plaintiff is evidently a citizen of Illinois. Is it your view that the defendant's time for removal doesn't begin until the plaintiff sends the defendant a piece of paper notifying the defendant of the place where it is incorporated? No, Your Honor. We would say that the complaint would state the citizenship of both parties to satisfy – No, it doesn't. A complaint in state court doesn't have to state anybody's citizenship. It might imply the plaintiff's citizenship, but the defendant's citizenship will almost never be stated in a state court complaint. But the defendant, a corporate defendant, would know its own citizenship. And so the question I'm asking is, can the defendant wait to remove until the plaintiff files a piece of paper telling the defendant what the defendant's own citizenship is? So, assuming that the complaint doesn't state the citizenship of the defendant – It won't. Believe me. Our position with regard to minimal diversity, or diversity in that case, is that the defendant could have knowledge of its own residence and own citizenship, so the plaintiff would not need to serve a document affirmatively and unambiguously stating diversity in that respect. They would have to serve a document affirmatively and unambiguously stating the amount of controversy in the case in order to satisfy that requirement of removal. We believe that this case is not analogous in this instance because, even though the defendant could maybe infer the defense from the complaint, the plaintiff is also capable of doing that as well. And when a plaintiff chooses to artfully plead in avoidance of federal jurisdiction, that is a risk that the plaintiff bears because the case could be completely preempted. Suppose the complaint says the plaintiff was run down in the road by a speeding car and has suffered serious and permanent bodily injury. Could the defendant remove at that point? And the defendant knows that its own citizenship differs from that of the plaintiff.  In that event, we see an awful lot of illegal removals because what normally happens in tort cases is the defendant says, the plaintiff has not pleaded an amount in controversy, but the complaint makes it quite clear that that amount has to be over $75,000. But there's no dollar figure in the complaint. And in your view, until the plaintiff puts a dollar figure in the complaint, the defendant can sit on its hands. That would be a revolution in removal jurisprudence. Your Honor, I would say that it's not just my view, it's the view that this court expressed in Walker. This court said that all the jurisdictions that this court covers, Wisconsin, Indiana, and Illinois, they do not allow a plaintiff to specify a dollar amount in their complaint as to the amount in controversy. This court nonetheless said that even with that fact, jurisdictional discovery may be necessary in order for that amount to be stated affirmatively and unambiguously in order for the clock for removal to start. So while it is possible for a defendant to infer the amount of controversy from a complaint... Do you know any other court that adopts the position that until the plaintiff tells the defendant something the defendant already knows or easily can figure out, the case is not removable? Not precisely, Your Honor, but I would direct the court to the Sixth Circuit that had a companion at two cases. The first was a case in 1991 called Holston that considered whether there was a timely removal under the Labor Management Relations Act. The district court there said that removal was timely because the defendant had not received notice that the plaintiff was represented by the union during the relevant time period. The Sixth Circuit in that case reversed, holding that receipt under Section 1446B3 meant mere possession or things that the defendant knew and that any other reading would give the defendant a tremendous advantage. The Sixth Circuit in Grayshire v. Vision Works, which is cited in Sunset's brief, held that that reading of Section 1446B3 was not administrable and decided not to follow that reading of the removal statute and instead chose to cite this court's decision in Walker to hold that the bright line under Section 1446B3 is that a document has to be served by a party of the union district. And what do you make of the language in Section 1446C, which talks about receipt of a document or other paper, and I'm quoting, or other paper from which it may first be ascertained that the case is one which is or has become removable? What do you make of that language? So in 1446C, I would say that that language mirrors what is in 1446B3 and that the language, that the interpretation of this court, that the... Look, we can read Walker. We can also overrule Walker. I'm asking you for your understanding of the meaning of that language. The meaning of that language has to also account for whether that rule is administrable. This court has counseled against... Just tell me what you think the language means. Yes, Your Honor. So I would think that it's from which a reasonable person could first ascertain, not necessarily the subjective person to whom the document is served. And that's why this court has asked that there be an affirmative and unambiguous statement that the case has satisfied the jurisdictional prerequisites. I would ask to reserve the rest of my time, Your Honor. Certainly, counsel. Ms. Engel. Ms. Engel. I'm muted. My apologies. Good afternoon, and may it please the court. My name is Madeline Engel. I represent the Plaintiff Appellee, Renita Raley, in this case. This court should dismiss this appeal first for lack of appellate jurisdiction or alternatively affirm the district court's order remanding the case to state court. I won't belabor the points as to diversity too much because I don't believe the defendant's reply brief really provided any of the missing pieces relating to plaintiff's domicile at the operative time, which was when she filed her complaint in state court. I will note that this court has explained in Brill and other cases that it is not proper for a party to just baldly assert that the parties are diverse without any appropriate supporting allegations and then attempt to shift the burden of establishing or disproving jurisdiction to either the opposing party or to the court, which ultimately is what defendant is asking the court to allow here. Because the record is totally silent as to diversity at the time of filing, we submit that this is fatal to this court's appellate jurisdiction. I do want to address what seems to be one point of agreement as to the district court's reasoning with respect to the basis for striking the amended notice of removal based on the Class Action Fairness Act jurisdiction. This was ultimately a harmless error, so it really should not provide the basis for any reversal of the result below, and this is for two reasons. The first is that what defendant termed a supplemental statement in support of jurisdiction was, in fact, an untimely amendment to its initial notice of removal. Defendant itself chose to sort of anchor that document on the initial notice of removal, rendering it by defendant's own presentation an amendment, which pursuant to 28 U.S.C. 1653 really requires it to be stricken and as the Fourth Circuit has held, the district court, in fact, had no discretion even to consider the contents of that document. Separately, any error as to the district court's reasoning for striking the amendment is rendered harmless in light of the total lack of diversity in the record before this court. Striking a document alleging jurisdiction on a deficient basis can't have harmed the defendant or led to a result that was incorrect. Ms. Engel, can I ask you a question? Why are you talking about this in terms of harmless error? To be more direct, let me ask the question this way. When the district court said it was striking the supplement, as I read the district court's order, it went on to then analyze the merits of the supplement, and it found that it was untimely. Ordinarily, when a court says, I'm striking this or that filing, the plain import of that is it's disregarded. That's not what happened here, right? The district court said in its first breath, I'm striking the supplemental filing, and then in its next breath went on to analyze it. I believe that's incorrect, Your Honor. I believe that what the district court did was it applied its interpretation of 28 U.S.C. 1332 D7 to find that the diversity analysis had to take place within, or that the removal under the Class Action Fairness Act, rather, had to take place within 30 days of January 22nd, 2020, which is when defendants served its discovery response, revealing that it knew about the contract all along, and that it had 30 days to do it. That's what I mean by merits. I don't want to get into a linguistic tangle over this. Why is that correct? Why doesn't the Class Action Fairness Act provide an independent basis for removal if its criterion are satisfied, separate and apart from any basis for removal under the removal statute? Because of defendant's strategic choice to anchor the diversity inquiry onto the initial removal, and separately because the merits weren't satisfied in the Class Action Fairness Act notice of removal. And what you mean by anchoring is that the defendant, by choosing the word supplement, somehow intended for this supplement to relate back? No, because the premise of the Class Action Fairness Act removal notice was that diversity needed to be established as of the time the defendant filed its initial notice of removal. It disregarded the time of filing rule, which is actually what governs the diversity assessment in this case. So what I'm suggesting is that because of this, I think a misstatement of when diversity should be measured, defendant chose to hinge the Class Action Fairness Act allegations on the by connecting the two by its own strategic choice. So for that reason, we suggest that it was an amendment as presented to the court. I do want to note with respect to the home state exception, although I realize that may not be determined as to this court's jurisdiction, it's a pretty basic premise that plaintiff cannot have waived subject matter jurisdiction. She's free to raise this home state exception at any time, including before this court, which is what she's done. Ultimately, with respect to the removal under the Labor Management Relations Act, it was essential to the district court, and it continues to be an essential factor that defendant intentionally withheld an operative document in order to gain the timing of its removal. I don't believe that that's in dispute here. And that really is the basis of everything that has happened since its removal in November of 2020. It hasn't really addressed this fact, the fact that it was in possession of this document. It described the document. It didn't turn over the document. And then it now is presenting to this court and to the district court that this is essential to the basis of federal jurisdiction, which we believe really makes clear what defendant's intent was in not turning that document over in the first place. With respect to Walker... Ms. Engel, why are you arguing it in those terms? Why are you arguing it in terms of what's in this or that document that's exchanged in discovery? Why aren't you arguing it in terms of your client worked for the defendant, and the defendant certainly had a, if it didn't know instantly upon seeing the plaintiff's first and last name within 30 seconds could have determined that she was a member of the union. Certainly. We did raise those arguments before the district court and ultimately felt that we were bound by the analysis in Walker to a certain extent. So for that reason, and because we're not necessarily requesting, although we would welcome the court to overrule Walker as it relates to the case, we're, we're abiding to a certain extent by the standards that were laid out in that case. You don't read Walker as factually different? I don't know why we're talking in terms of overruling Walker. It is factually different. And we talk about that in our brief on a number of fronts, namely that the information and documents giving rise to removal are a far cry from the amount of controversy that a plaintiff seeks to recover their within defendant's exclusive control, presumably at the outset. And there was no reason to believe that a plaintiff would even have access to them, given that she herself is not a party to the collective bargaining agreement. And that is certainly the case with respect to this particular contract. I also think that, you know, this sort of strict reading of receipt that defendant is advancing is not an extension of Walker. Walker pretty clearly explains that what the court doesn't want to get into is an inquiry into the defendant's subjective knowledge of what it might have known, nor into what it could have uncovered in an independent investigation. We're not asking the court to really depart from those rules in any way here because there is no question, certainly at least as of January, but realistically earlier as to what defendant knew and when it knew it. It's, it's fairly clear that the reading the defendant proposes would as it did here, allow it free reign to test the waters in a state court forum unless and until it finds that it might do better in federal court, at which point it can conveniently discover information, giving rise to a removal and remove at any time here, but that also resulted in an accompanying removal under the class action fairness act that we believe acted as something of an insurance policy to ensure this court's review while it would not have been reviewable otherwise. And, and we agree that, you know, the sort of logical extreme of what defendant is proposing here is effectively that a plaintiff has to sort of regurgitate back to a defendant information that it already has in order to make clear on the record in a, a technical manner that there is a basis for removal. I also note on that front that plaintiff was not in a position to do that if, if she had interest in pursuing that strategy, because she didn't have this information that was essential to the preemption defense. I know there are kind of gestures that the plaintiff must have known about the collective barring agreement, the management rights clause. That simply isn't the case. There's nothing in the record to establish that plaintiff was not in possession of this document. She didn't even know the name of the union of which she was a member at any point until defendant served its discovery responses. The, the practical implications ultimately of what defendant is proposing here is totally at odds with the whole purpose of the 30 day limit in 1446 B3, which is to force a quick decision about whether to remove to federal court and not wait and see what might be the better forum for litigating a claim or as here a defense. It, it ultimately that entire policy purpose would be undone by accepting what defendant is, is asking this court to do so for those reasons and those that we included in our brief, we would ask that the court either dismiss this case for lack of appellate jurisdiction or affirm the district court's order remand in the case to the circuit court. Thank you. Thank you. Counselor. Anything further, Mr. Cockcroft. Yes, your honor. A few things. The first thing is with regard to whether minimal diversity was satisfied for the purpose of jurisdiction under the class action fairness act. As a sunset stated in its supplemental notice of jurisdiction it is plaintiff was domiciled in the state of Georgia at the time that defendant removed under that removed under the labor management relations act. And at the time that the notice was served regarding the class action fairness act, while plaintiff says that a bold assertion of information and belief as to the party's diversity is insufficient on pleading on a notice of removal. This court and medical assurance corporation versus Hellman stated that where a party asserts a specific domicile of the opposing party and the opposing party does not contest it, then that is sufficient to satisfy the notice of removal because plaintiff is in the best position of knowing when she was domiciled in Illinois or when she was domiciled in Georgia. What do you do about the home state controversy exception given the class definition? Yes, your honor. So this court has questioned in Miller whether or not a plaintiff can do that under this particular Illinois statute, the biometric information privacy act. This, this court interpreted that act as including people that may be domiciled outside of Illinois, but work in Illinois and have their biometric information allegedly collected in Illinois. So we would direct this court to that decision. Secondarily, if there is a, if citizenship in Illinois is determinative of the members membership of the class, that would be an issue for plaintiff because as we argued in our briefs, plaintiff has not been able to demonstrate that she was ever domiciled at Illinois at any time in this, in this case, she's only instead alleged that she was a resident of Illinois, but that we know for certain she moved to Georgia at some point later in the case. Um, the, uh, the last issue with regard to class action fairness act is that plaintiff, uh, notes that, um, that the timeliness issue was in a, rather the class action fairness act was an amendment to the original notice. As we argued in our reply brief, that issue is irrelevant. If timeliness under the class action fairness act is not tied to any other basis of federal jurisdiction, it doesn't matter if it's a amendment or a supplement or a subsequent notice that was made maybe years later in the case. Why in the world did you call it or your client call it a supplement? Because we had the original notice of removal and we just wanted to offer a another basis of federal jurisdiction for the court. That's the reason that we called it a supplement, but regardless of whether it is a supplement or is an amendment, if it is the case that the timeliness of, of removal under the class action fairness act is a different clock than other bases of removal, it doesn't matter when it is asserted. It's a, it's timely asserted if it is timely asserted on its own. Mm hmm. Well, thank you very much counsel. Thanks to both counsel. The case is taken under advisement.